SHAFT, Respondent, vs. CAREY and others, Appellants.

*April 25—September 23, 1902.*

(1, 2) *Appeal: Effect of decision: New trial.* (3) *Landlord and tenant: Wrongful closing of doorway: Damages.*

1. The decision of the appellate court upon a question of law necessarily or properly involved in the consideration of the issues raised upon the appeal is the law of the case when such question arises upon a new trial.

2. The question on appeal was whether every fact essential to plaintiff's right to recover appeared, either admitted or undisputed, upon the pleadings, and it was held that but one additional fact was needed to entitle him to recover. Upon a new trial the pleadings remained the same, and the evidence did not change the facts as they appeared on the face of the pleadings, but conclusively showed the existence of the additional fact. *Held,* that plaintiff's right to recover upon the facts so appearing was settled by the former decision; and it was also settled thereby, as the law of the case, that other facts alleged in the answer did not constitute a defense, so that evidence thereof was properly excluded on the new trial.

3. Where under a lease of a saloon the lessee was entitled to have a doorway between it and an hotel office remain open, the measure of damages recoverable from the lessor for the wrongful closing up of such doorway is the decrease in the rental value of the premises.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHAS. M. WEBB, Judge. *Affirmed.*

This is an action in equity, brought by a tenant against his landlord and two other persons for relief by way of injunction and damages. The action has been before in this court upon a former appeal, and will be found reported in 107 Wis. 273, 83 N. W. 288, where a judgment for the plaintiff, rendered upon the pleadings, was reversed, and the action sent back to the trial court for further proceedings. It appears by the pleadings that the defendant *Carey,* in 1897, owned a certain hotel known as the "Palmer House," in the city of Fond du Lac, and that upon the 1st of July, 1897, he leased to the plaintiff the saloon and barroom in such house for the term of one year, with the privilege to the plaintiff to renew said lease for four years longer by notice in writing. The allegations of the complaint will be found sufficiently stated in the statement of the case upon the former appeal, above referred to, and it is not necessary to recite them here, except to add that the plaintiff, in addition to his demand for relief by way of injunction, also claimed to recover damages of the defendant *Carey* by reason of the violation of the covenants of the lease.

To this complaint the defendant *Carey* answered separately, admitting the lease to the plaintiff and the renewal thereof, and also admitting that he leased in the year 1898 substantially the entire balance of the hotel building to the defendant *Machette;* also that the door from the hotel proper into the plaintiff's saloon was closed by the defendant *Machette* with the defendant *Carey's* consent; also that *Machette* opened a saloon in an annex to the hotel building erected by *Carey,* but claimed that said annex was not a part of the Palmer House block. The defendant *Machette* answered, admitting that he leased a considerable part of the Palmer House block as a hotel in the year 1898 of the defendant *Carey,* and that he caused the door into the plaintiff's saloon to be closed, and

that he established a saloon for the sale of liquors and cigars in the so-called annex. Another defendant, named Taylor, answered, claiming that he was merely an employee of the defendant *Machette,* but his rights are not in question upon this appeal.

The case was tried by the court, and findings were made substantially in accordance with the allegations of the complaint, and that the plaintiff had sustained damages by reason of the breaches of the covenants in his lease amounting to the sum of $50 per month from the time of the closing of the door into his saloon, and judgment was entered that the interlocutory injunction be made perpetual during the existence of the plaintiff's lease, that the plaintiff was entitled to have the door between the hotel proper and his saloon restored, and that the plaintiff was entitled to recover of the defendant *Carey* the damages found by the court, amounting to $966.66, with costs. From this judgment the defendants *Carey* and *Machette* appeal.

For the appellants there was a brief by *H. H. Hayden,* attorney, and *H. B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley.*

*Edward S. Bragg,* for the respondent.

The following opinion was filed May 13, 1902:

WINSLOW, J. The defendants' counsel assigns 110 errors, and argues most of them under separate heads and subheads in a brief of an almost equal number of pages. In a case tried by the court, and in which the principal questions were supposed to have been discussed and decided by this court upon a former appeal, this showing certainly establishes his industry and zeal beyond a reasonable doubt. It is true that he notices, in passing, the fact that some questions relevant to the case were incidentally mentioned in the opinion upon the former appeal, but he easily disposes of that opinion upon the ground that, because that appeal resulted in a reversal, noth-

ing was thereby settled except the proposition that the complaint did not state a cause of action. If this view be correct, it would seem to follow that many of the opinions of this court are of no practical value save as more or less elegant examples of legal essays upon academic questions. We have not been accustomed to so regard our opinions. We have supposed that, when legal questions presented by the record in a case before us were discussed and decided, the conclusions reached had some perceptible effect, even when the judgment was reversed and further proceedings ordered.

, However, the insistence and apparent sincerity of counsel in his position have induced us to examine the question anew, and the investigation so made has simply served to confirm our previous views. Thus, in *Parker v. Pomeroy,* 2 Wis. 112, it was held that the decision of a legal question in the cause made by the supreme court upon a former writ of error in the same cause (*Pomeroy v. Crocker,* 3 Pin. 378) must be considered *res adjudicata* upon a subsequent trial of the case upon the same facts. In *Ranney v. Higby,* 6 Wis. 28, it was held that upon retrial of a jury case after reversal by this court upon a former appeal, instructions in accordance with the views of the court as expressed in the previous opinion should have been given, no new facts having been elicited at the last trial. In *Cole v. Clarke,* 3 Wis. 323, it was held that, when questions had been once decided by this court in a case, whether rightly or wrongly, that decision becomes *the law of the case,* by which the parties are bound upon a new trial. This principle thus early laid down has never been overruled or departed from by this court. It is acted upon frequently— almost daily in fact—by the trial courts. It is logical; in fact without it this court would frequently be in the ridiculous position of an officious intermeddler, and suits might have no end. In 2 Van Fleet, Former Adj. § 664, the principle is thus stated: "If a cause is reversed in a higher court, the lower one is bound to proceed in accordance with the

opinion sent down;" and to this proposition are cited many authorities. The rule is not strictly one of *res adjudicata*, because the judgment is simply one of reversal; but it is frequently so termed, and the inaccuracy is perhaps not very material when the principle is correctly understood. The proposition is that, when the appellate court passes upon a proposition of law necessarily or properly involved in the consideration of the issues raised upon the appeal, its decision on that question becomes the law of the case when such question arises upon a new trial. Of course, upon a new trial the pleadings may be changed, or the evidence (if it be a question with regard to the effect of evidence) may be different, and so the first decision may become inapplicable; but this is no invasion of the rule, because in such case the question first passed upon does not arise again.

With this principle in mind, we have simply to inquire what questions were properly raised and decided upon the first appeal, and whether any of them arose again upon the retrial. The judgment first appealed from was based upon the pleadings, and the question was whether every fact essential to plaintiff's right to recover appeared either admitted or undisputed upon the complaint and answers. The pleadings were reviewed, and it was held, in effect, that, if the door from the hotel was open when the lease was renewed in July, 1898, the plaintiff was entitled, under his lease, to have it remain open, or, in other words, entitled to judgment for the relief prayed; but that, as it was not definitely stated in the pleadings whether the door was open July 1st, and no evidence had been taken to show that it was then open, judgment was wrongly ordered. The opinion says:

"To entitle the plaintiff to a judgment requiring the removal of the barricade to the door, the complaint should have alleged with definiteness the precise condition of things at the time of the renewal, or proof should have been taken so that the court could have been advised of the facts as a basis for judgment." *Shaft v. Carey,* 107 Wis. 278, 83 N. W. 290.

With regard to the sale of liquors in the annex, it was held that the annex became, on the facts stated, a component part of the Palmer House block, and so within the restrictions of the lease. If these rulings do not definitely and necessarily decide that the judgment would have been entirely correct if it had appeared that the door was open July 1, 1898, when the lease was renewed, it would be interesting to know how the opinion could have been worded so as to decide that proposition. It seems so plain to us that such is the necessary construction and effect of the opinion that we shall spend no further time attempting to make it clear. Upon the retrial the pleadings remained the same, and the evidence did not change the facts as they appeared on the face of the pleadings. Evidence was introduced showing conclusively (as the court found) that the door in question was open on and before July 1, 1898, and, this fact appearing, the plaintiff's right of recovery became settled by the principles laid down in the former opinion.

It was vigorously contended, however, that there was one new question in the case, at least, upon which the defendants were not foreclosed. The lease contains a provision that the plaintiff's saloon should be conducted in accordance with law and the ordinances of the city, and that a failure to keep this condition should terminate the lease at once. The defendants' answers contain general denials of all allegations of the complaint not admitted or otherwise answered, and the defendants offered upon the trial to prove that the plaintiff had conducted gambling in his saloon, and otherwise disobeyed the laws and ordinances applicable to saloons, which evidence was ruled out by the court. The argument of defendants is that under the pleadings they were entitled to show that the plaintiff was running a saloon in violation of law, and that, if such was the case, it formed a complete defense on the ground that a court of equity will not lend its aid to help out an unlawful business which is injurious to the public welfare

and morals. Were the case free from the former decision, this question would be a serious one; but, if that decision has the effect which we have given it in this opinion, it is not an open one. The allegation on which the right to introduce the evidence is based was in the pleadings when the former decision was made, though attention was not called to it, and the decision to the effect that but one additional fact was needed to entitle the plaintiff to recover plainly bars out this supposed defense as surely as it bars out others. The trial court was right in holding that the defendants were foreclosed upon the question.

Complaint is made as to rulings upon evidence on the question of damages. The plaintiff recovered of *Carey,* his landlord, a judgment for $50 a month as damages for the closing of the door from the time the same was closed. This judgment was based on evidence of expert witnesses showing that the rental value of the saloon with the door closed up was $50 or more less per month than it would have been had the door been open. The decrease in the rental value of the premises by reason of the unlawful closing of the door was doubtless the true measure of damages. *Hunter v. Hathaway,* 108 Wis. 620, 84 N. W. 996. There was ample competent evidence to sustain the court's finding. None of the rulings complained of could have affected the conclusion reached, and, the trial having been by the court, they do not constitute ground for reversal, even if erroneous.

*By the Court.*—Judgment affirmed.

Upon a motion for a rehearing there was a brief for the appellants by *H. H. Hayden,* attorney, and *H. B. Walmsley,* of counsel, and a brief for the respondent by *Edward S. Bragg,* attorney, and *John I. Thompson,* of counsel.

The motion was denied September 23, 1902.